**Ronald Eric GREGG, Plaintiff–Respondent,**

v.

**John P. GEORGACOPOULOS, Defendant–Appellant.**

**No. 22255.**

Missouri Court of Appeals, Southern District, Division Two.

March 16, 1999.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 6, 1999.

Application to Transfer Denied June 1, 1999.

---

1. All statutory references are to RSMo 1994, unless otherwise indicated.

Richard D. Crites, Springfield, for appellant.

Peggy S. Hedrick, Springfield, for respondent.

KENNETH W. SHRUM, Presiding Judge.

This is a quiet title suit in which Plaintiff claims ownership of certain real estate by virtue of a beneficiary deed from Thomas Fullerton (Fullerton), who is now deceased. Defendant asserts ownership to the same tract via a quitclaim deed purportedly executed and recorded by Fullerton prior to the beneficiary deed to Plaintiff. Plaintiff challenges the validity of the quitclaim deed to Defendant, claiming, *inter alia*, "[i]t was not executed by ... Fullerton, as required by RSMo 442.130." The trial court found for Plaintiff and against Defendant. This appeal followed. We reverse and remand.

### FACTS

In May 1972, Defendant and Fullerton bought a residential property at 736 South McCann, Springfield, Missouri. They held title to the property as tenants in common. On April 21, 1989, Defendant conveyed his interest in the home to Fullerton. Thereafter, Fullerton lived in the house until his death on April 4, 1994. Before he died, Fullerton signed and recorded a beneficiary deed that granted Plaintiff the beneficial interest in the house. The beneficiary deed was dated November 10, 1993, and recorded November 12, 1993.

In March 1994, Defendant came to visit Fullerton at his home. At the time, Fullerton was gravely ill and Plaintiff was helping care for him. After Defendant

accused Plaintiff of not giving Fullerton adequate care, Defendant was told to stay away. When Defendant came back to the house, Plaintiff asked his lawyer to call for police assistance. When the police arrived, Defendant produced a quitclaim deed dated June 29, 1989, purportedly signed by Fullerton, which named Defendant and Fullerton as joint-tenancy grantees. The deed described the McCann street property and had been recorded in the Greene County Recorder's office on July 14, 1989.

The deed recites that Fullerton signed the same in Florida on June 29, 1989, and contains a Florida notarization on that date. However, the notary public's purported signature is illegible, the name of the notary public cannot be discerned from the imprint of the seal, and the notary public's name is neither typed nor printed below the alleged signature.

At trial, Plaintiff called several of Fullerton's close friends, neighbors, and fellow employees, who testified that Fullerton was in Springfield, Missouri, on June 29, 1989; consequently, he could not have signed the joint-tenancy quitclaim deed in Florida on that date. Plaintiff also presented evidence that he and Fullerton left Springfield on July 8, 1989, and went to France, where they stayed until August 1, 1989. Consequently, Fullerton could not have personally taken the questioned deed to the Greene County courthouse for recording on July 15, 1989.

The trial court's judgment quieted title for the subject property in Plaintiff. The judgment contained the following findings:

"11. The document purporting to be a quitclaim deed signed by ... Fullerton June 29, 1989, in St. Lucie County, Florida, recorded in the ... Greene County Recorder of Deeds Book 2063 Page 600, on or about July 15, 1989, is null and void.

"a) Thomas Fullerton was in Missouri, and not in the State of Florida on June 29, 1989.

"b) Thomas Fullerton was in France, July 15, 1989, when the deed was recorded, and he did not record said Quitclaim deed in the State of Missouri.

"c) The deed was not executed by Thomas Fullerton, as required by RSMo 442.130[.]

"12. [Defendant] was not a credible witness."

This appeal followed.

## DISCUSSION AND DECISION

■ In Points I(B) and I(C), Defendant charges that the trial court erred in ruling favorably to Plaintiff and finding that the June 1989 quitclaim deed that purported to create a joint tenancy ownership in Defendant and Fullerton was "null and void." First, Defendant argues that Plaintiff "failed to present any evidence, much less clear, convincing and cogent evidence that Thomas Fullerton did not sign the quitclaim deed dated June 29, 1989." Second, Defendant asserts that any defect or irregularity in the acknowledgment of the subject deed could not be a basis for invalidating the deed since Plaintiff was not a purchaser for value without notice.

■ A suit to have a deed declared void invokes the most extraordinary power of equity, *Miller v. Minstermann*, 266 S.W.2d 672, 679[1] (Mo.1954). Consequently, a party seeking cancellation of a deed bears the burden of establishing by clear, cogent, and convincing evidence the basis for exercising such power. *Blackburn v. Spence*, 384 S.W.2d 535, 539[4] (Mo.1964).

■ "The essential elements of a deed are: (1) Names of the parties thereto, (2) words of grant, (3) description of the property, (4) execution and delivery by the grantor, and (5) acceptance by the grantee." *Boatmen's Nat'l Bank v. Dandy*, 804 S.W.2d 783, 785[7] (Mo.App.1990). The dating of a deed is not an essential element. *Eld v. Ellis*, 235 S.W.2d 273, 276[7] (Mo.1950). "Absence of a date, or an erroneous or impossible date, is a mere irregu-

larity" and, standing alone, will not invalidate a deed. *Id.*

■ Moreover, an acknowledgment is not always required in order for a deed to be valid. *Robb v. N.W. Elec. Power Coop.,* 297 S.W.2d 385, 389[7] (Mo.1957). This is fully explained in *Jamieson v. Jamieson,* 912 S.W.2d 602 (Mo.App.1995) as follows:

"All deeds ... of lands ... must be subscribed by the grantor and acknowledged. § 442.130 RSMo 1986.... The purpose of acknowledgment is to admit the instrument to record and to protect creditors and subsequent purchasers. Where the formal acknowledgment is defective or irregular the instrument is not invalidated as between the parties or persons having actual notice of the deed.... Therefore, *only those standing in the position of purchasers for value without notice can take advantage of a defective acknowledgment.*" (Citations omitted.)

*Id.* at 605[12,13,15]. (Emphasis supplied.)

Here, Plaintiff was not a purchaser for value without notice. The beneficiary deed, on its face, recites that it was a conveyance "without consideration." Moreover, Plaintiff testified that he had learned about Defendant's deed in March 1994 when Defendant used it to persuade police not to remove him from Fullerton's home. At that time, Fullerton was still living; consequently, the beneficiary deed had not yet effectively conveyed title to Plaintiff. *See* § 461.025 RSMo Cum.Supp. 1995. Since Plaintiff was not a purchaser for value without notice, defects or irregularities in the acknowledgement cannot be a basis for the trial court's determination that the deed was "null and void." *See Jamieson,* 912 S.W.2d at 605[15]. Point I(C) has merit.

■ Regarding Point I(B), it, too, has merit. Although we agree with the trial court's implicit finding that there was clear, cogent, and convincing evidence that Fullerton was not in Florida on June 29, 1989 (the date of execution recited in the quitclaim deed) and he was not in Greene County, Missouri, on July 14, 1989, (the date the deed was recorded) those facts, which stand alone, fail to establish by the required degree of proof that the signature of Fullerton on the subject quitclaim deed was forged. As noted earlier, the recital of a correct date, or any date, on a deed is not an essential element to its validity. *See Dandy,* 804 S.W.2d at 785[7]; *Eld,* 235 S.W.2d at 276[7]. Also, recording was not essential to the validity of this deed since Plaintiff had actual knowledge of the June 29, 1989, quitclaim deed before Fullerton's beneficiary deed to Plaintiff became effective. Because Plaintiff has not proven by the requisite standard that the June 29, 1989, quitclaim deed was not "subscribed" by Fullerton as required by § 442.130, the judgment must be reversed.

■ An appellate court should reverse a judgment for plaintiff without remand only if it is clear the plaintiff cannot make a submissible case on retrial. *Warren v. Paragon Technologies Group,* 950 S.W.2d 844, 846[9] (Mo.banc 1997); *Frankum v. Hensley,* 884 S.W.2d 688, 692[6] (Mo.App. 1994). *Cent. Bank of Lake of Ozarks v. Shackleford,* 896 S.W.2d 948, 957[13] (Mo. App.1995). "The preference is for reversal and remand." *Moss v. Nat'l Super Markets, Inc.,* 781 S.W.2d 784, 786[3] (Mo.banc 1989).

■ Apparently, Plaintiff's attorney believed that it was only "handwriting experts" who could give admissible opinions regarding the genuineness of a signature. Abundant case law teaches otherwise, including *State v. Sanders,* 714 S.W.2d 578, 589[12,13,14,15] (Mo.App.1986):

"In Missouri no particular expertise is required in order to form an opinion of handwriting. Opinion evidence as to handwriting is not wholly without foundation merely because the witness did not see the letters signed and was not a handwriting expert. Substantial proof that a signature is genuine may be made by the testimony of one who knows the

handwriting and signature of the writer. Under the rule long established and universally applied a showing that the witness was personally acquainted with the person and had seen him write his name a number of times is sufficient to establish the competency of the witness to give an opinion whether the signature is in the handwriting of that person, and the weight to be given the testimony is a question for the [fact finder].... [I]t is settled everywhere that if a person has seen another write his name but once that person can testify as to an opinion whether the handwriting is that of the defendant." (Citations omitted).

■ Nothing in this record suggests that Plaintiff cannot, on remand, present proof to cure the evidentiary deficiency that required reversal. Many of Plaintiff's witnesses were obviously well acquainted with Fullerton's handwriting and signature but, inexplicably, Plaintiff never elicited their opinion on whether Fullerton's signature appeared on the June 29, 1989, quitclaim deed. Remand is the preference here.

Finally, we address Defendant's Point I(A) so that it will not be an issue on retrial. Defendant's I(A) complains that the trial court erred in finding his deed from Fullerton "null and void" because Plaintiff confessed, by omissions in his pleading, that Fullerton had signed the quitclaim deed. Defendant points out that his answer and counterclaim contain affirmative allegations that he owned the real estate via the June 29, 1989, deed, that he attached a copy of the deed to his pleadings, and that Plaintiff never filed reply pleadings specifically denying that Fullerton signed the deed. Consequently, Defendant argues that Rule 55.23 is implicated and Fullerton's signature on the deed stands confessed. Rule 55.23 provides:

"When any claim or defense is founded upon a written instrument and the same shall be set up at length in the pleading or a copy attached thereto as an exhibit, the execution of such instrument shall be deemed confessed unless the party charged to have executed the same shall specifically deny the execution thereof."

Arguably, Defendant's argument fails because "the party charged to have executed" this questioned document, i.e., Thomas Fullerton, was not a party to this litigation. We are not persuaded that Rule 55.23 applies under such circumstances. However, we have chosen to resolve the question in another fashion.

We note that "Missouri is a fact-pleading state." *Luethans v. Washington Univ.*, 894 S.W.2d 169, 171[4] (Mo.banc 1995). The purpose of fact-pleading is to present, define, and isolate issues so as to advise the trial court and the parties of the issues to be tried and to advance the trial of a case on its merits. *Id.* at 171[5]. Here, Plaintiff's petition alleged that the June 29, 1989, quitclaim deed was "void" because, *inter alia*, "[i]t was not executed by Thomas Fullerton, as required by RSMo 442.130." Section 442.130 provides that "[a]ll deeds ... of lands ... shall be subscribed by [the grantor] ... and shall be acknowledged." The word "subscribe" literally means "[t]o sign at the end of a document." BLACK'S LAW DICTIONARY 1427 (6th ed.1990).

■ Plaintiff pled that Fullerton did not sign the deed and thus fulfilled the pleading requirement of presenting, defining, and isolating the issues. Whether Fullerton's purported signature on the subject deed was genuine was specifically put in issue by Plaintiff's petition. Consequently, Defendant's answer and counterclaim did not set forth a "new matter" that required Plaintiff's denial. Under the circumstances, the fact that Plaintiff's responsive pleadings did not specifically deny Fullerton's execution of the deed is not a confession of that issue. To argue that Rule 55.23 has application here as Defendant urges is disingenuous at best. We reject Defendant's argument on this point.

The judgment is reversed and the cause remanded for further proceedings.

MONTGOMERY, J., and BARNEY, J., Concur.